E-FILED
Monday, 24 November, 2014 04:02:58 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case. No. 4:14-cr-40014-SLD-JEH |
| STEVEN PIPER, | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

The government alleges that Steven Piper was previously convicted of a felony and knowingly possessed a firearm that had traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Indictment 1, ECF No. 1. Before the Court is Piper's First Motion in Limine, ECF No. 22, in which Piper moves to bar the government from introducing at trial any testimony or evidence about several burglaries Piper allegedly committed in the summer of 2013 along with Catherine Mierendorf in Mercer, Henderson and Warren Counties in Illinois. For the following reasons, Piper's motion is GRANTED IN PART and DENIED IN PART.

### BACKGROUND AND PROCEDURAL HISTORY

The Government alleges that Piper and Mierendorf, Piper's girlfriend, committed five burglaries of rural Illinois properties in the summer of 2013. Gov't's Resp. Mot. Limine 1, ECF No. 24. At one of these locations, the McVey residence, the pair allegedly found the handgun which gives rise to the present allegations. *Id.* at 2. According to the Government, it was Piper and Mierendrof's practice to commit these burglaries at night, using Piper's car for transportation, and to sell the stolen items, splitting the proceeds. *Id.* It was also supposedly their

practice to commit these burglaries alone, with the exception of one occasion on which Catherine's brother, Don Mierendorf, assisted. *Id.*

The alleged burglary of the McVey house (which, like all the other burgled locations, was vacant) occurred on July 25, 2013. Gov't's Resp. Mot. Limine 3. At this point, Piper is supposed to have handled the gun and planned with Catherine to try to sell it, agreeing to keep the gun at the house that Catherine shared with her brother. *Id.* The next day, July 26, Howard McVey, the son of the McVey house's owner, was tending his cattle nearby and saw a silver-colored car behind the house. *Id.* Growing suspicious, McVey summoned Officer Matt Link, and the two went to the house, where they saw bags with items from inside the house laid out on the lawn, and fresh tire tracks leading away from the house. *Id.* A silver car then drove by the house, which other officers eventually stopped. *Id.* The car was driven by and registered to Piper, and Catherine Mierendorf was the only passenger. *Id.* at 3–4. Both denied involvement in the burglary of the McVey house. *Id.*

The next day, an anonymous caller phoned in a Crime Stoppers tip, saying that Piper and Mierendorf had been burgling abandoned houses in the area using Piper's car. Gov't's Resp. Mot. Limine 4. Someone who seemed to be the same person called back on two later dates, saying that stolen property from the burglaries was being kept at the house where Mierendorf and her brother lived. Local authorities used this information to get a search warrant, and searched Mierendorf's home on August 8. *Id.* The police found some items that appeared to be stolen; Catherine admitted that they were, and was arrested. *Id.* The police also searched Piper's house the same day, and found other goods that appeared to be stolen. *Id.* The next day, the police returned to search both houses again, this time finding more stolen items and, with

information from Catherine and her brother's ex-wife, the stolen handgun, in the bottom of a clothes hamper at the Mierendorf house. *Id.*

While Catherine pleaded guilty to burglary charges in state court, Piper was charged federally in the instant action. Gov't's Resp. Mot. Limine 4–5. In a letter dated October 8, 2014, the government notified Piper, pursuant to Federal Rule of Evidence 404(b)(2), that it planned to offer evidence of his "involvement in the residential burglaries that he committed with Catherine Mierendorf in Mercer, Henderson, and Warren Counties in the summer of 2013 as evidence of opportunity, knowledge, motive, *modus operandi*, and possession of the charged handgun, as well as to provide necessary background information about the investigation." Def's Mot. Limine 1, Ex. A 2; ECF No. 22-1. Piper moved to bar admission of such evidence pursuant to Federal Rules of Evidence 404(b) and 403, and the government responded, ECF No. 24.

At a hearing on these motions held on November 20, 2014, Piper indicated that he did not seek the suppression of evidence or testimony about the alleged July 25 or 26 burglaries at the McVey house, both of which the government had argued should be admitted. Rather, Piper clarified that he objected only to the introduction of evidence or testimony about the other burglaries alleged to have occurred in the summer of 2013.

## DISCUSSION

### I. Legal Standard

Evidence that a criminal defendant committed other crimes, wrongs, or acts is not admissible to show that that the defendant has a propensity to act in a certain way and on a particular occasion did act in that way because of the propensity. Fed. R. Evid. 404(b)(1). However, evidence of prior acts may be admitted if it is offered for a range of other permitted

3

purposes, such as to show a defendant's motive, plan, or opportunity on a particular occasion. Fed. R. Evid. 404(b)(2). Even if evidence of prior acts is found admissible as serving a permitted 404(b) purpose, it may still be excluded if it is substantially more prejudicial than probative. Fed. R. Evid. 404(b). Finally, no evidence is admissible unless it is relevant—that is, has a tendency to make a fact of consequence to determining the action more or less likely. Fed. R. Evid. 401, 402.

One of the difficulties with 404(b) evidence is that, even if offered for a legitimate purpose, such evidence almost always, by its nature, is capable of supporting negative inferences about a defendant's character, and suggesting that he acted in accordance with those bad traits of character. *See U.S. v. Beasley*, 809 F.2d 1273, 1279–80 (7th Cir. 1987) ("Almost *any* bad act evidence simultaneously condemns by besmirching character and by showing one or more of 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident'" (original emphasis)). Moreover, because prior bad acts are often highly inflammatory, they tend to run the risk of being more prejudicial than probative, and hence inadmissible under Rule 403 as well.

Although maintaining that Rule 404(b) provides a "clear roadmap for analysis," the Seventh Circuit recently felt it necessary to create a new, "straightforward rules-based approach" to determining the admissibility of prior bad acts. *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014). Under the *Gomez* approach, a court:

**(1)** Determines whether evidence is relevant pursuant to Rule 401 and 402. The proponent of the evidence must be able to show that the evidence is relevant not just on any theory, but why it is relevant when taken for the particular purpose for which

4

it is offered. *See id.* at 855 ( "The proponent of other-act evidence should address its relevance directly, without the straightjacket of an artificial checklist").

**(2)** Determines whether the purpose for which the evidence is being offered is permissible under 404(b). It is not sufficient for the proponent of the evidence "simply point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. Rather, a court will ask whether "the evidence is relevant without relying on a propensity inference." *Id.* This means that the proponent of the evidence, or at least the court, must be able to identify a "propensity-free chain of reasoning" by which the evidence can be deemed relevant. *Id.* (citing *U.S. v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013)).

**(3)** Determines whether the evidence is not substantially more prejudicial than probative. Thus, Rule 403 acts as a final check that excludes slightly probative evidence whose main effect will be the inflammation of the jury's passions rather than the illumination of their fact-finding. *See Gomez* at 845 (explaining that Rule 403 excludes "other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity").

*Gomez* requires a proponent of other-act evidence first to lay out *in detail* the inferential chain by which offered evidence makes a material fact more or less likely; next, to show that this chain of inference does not necessarily entail a forbidden propensity inference; and finally, to argue persuasively that this chain of inference does not have a "high likelihood" of nonetheless eliciting forbidden inferences that the evidence could also support. A detailed enumeration of the links along the inferential chain is critical because "[s]potting a hidden propensity inference

5

is not always easy." *Gomez*, 763 F.3d at 856. *See United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) ("Had the court asked more specifically how the prior conviction tended to show intent eight years later, it would have recognized that it was dealing with propensity evidence all the way down"); *Lee*, 724 F.3d at 978 ("When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked to draw from that evidence, and by what chain of logic, it will sometimes become clear . . . that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense").

   II.   **Analysis**

Piper has stipulated that he was a felon at the time of the charged offense, and that the handgun with whose possession he is charged had traveled in interstate commerce. Gov't's Resp. Mot. Limine 13. The only element of the crime the government must prove is that he possessed the gun. *See* 18 U.S.C. § 922(g)(1). However, complicating matters, the government is proceeding by trying to show that Piper either actually possessed the gun or constructively possessed the gun, or both. Gov't's Resp. Mot. Limine 5. Piper denies both claims, and intends to argue that the Mierendorfs are attempting to transfer ownership of the gun found on their property, and culpability, to him. Def's Mot. Limine 6. There are thus two material sets of possible facts to which evidence in this case may be relevant: Piper's physical possession of the gun on or around July 25, 2013, and Piper's constructive possession on that date or thereafter. While the former scenario obviously supports the latter, either is sufficient for Piper's guilt, and neither is conditioned absolutely on the other's being true.

Actual possession, for purposes of the felon-in-possession statute, means direct physical possession, while constructive possession can be established "by demonstrating that the

defendant knowingly had the power and intention to exercise dominion and control over the object, either directly or through others, thus establishing a nexus between himself and the object." *United States v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009). Exclusive control over a premises permits a weapon found there to be attributed to the exclusive controller, but when one or more person controls a premises, or a person does not share in control over a premises, then the government must offer evidence supporting the nexus between the gun and the defendant. *United States v. Irby*, 588 F.3d 651, 654 (7th Cir. 2009).

**A. Relevance of Other Burglaries**

Although the government offered little more than the "permitted list" of 404(b) purposes in its October 8 letter to Piper, its motion substantially narrows the number of purposes for which it seeks to offer evidence of the other burglaries during the summer of 2013. The government narrows its theory of the other burglaries' relevance to their tendency to show that Piper had a motive to possess the gun—namely, to sell the gun as he and Catherine had previously sold the other proceeds of their burglaries.[1] The government continues to maintain that the evidence of the prior burglaries is probative of both actual and constructive possession.[2] However, the government does not explain in detail the inferential chain by which the evidence of prior burglaries supports the claim that Piper actually or constructively possessed the gun.

**i.  Actual Possession**

The other burglaries are not probative of the actual possession theory if one ignores their tendency to make it more likely that the July 25 and 26 burglaries occurred. If one tries to omit

---

[1] "The evidence that the defendant and Catherine burglarized these other residences is highly probative of the issue of possession in this case because it shows that they engaged in a *joint* endeavor of stealing items making it more likely that they had *joint* possession of the gun . . . . This 'common scheme of plan or joint behavior,' in fact, is really just another way of stating the other-act evidence demonstrates the defendant's motive for possessing the gun." Gov't's Resp. Mot. Limine 12–13 (original emphasis).
[2] "The defendant possessed the gun—whether his actual possession of it on July 25 or his constructive joint possession of it thereafter—in order to profit from it." Gov't's Resp. Mot. Limine 13.

such an inference, one ends up with something like: since Piper had committed other burglaries whose proceeds he split with Catherine Mierendorf, he was more likely to have physically touched and possessed this gun during the burglary than he otherwise would have been.[3] Rather, to support an actual possession theory via the prior-burglary evidence, one must infer the tendency of the other burglaries to make the July 25 and 26 burglaries more likely, thus: since Piper had committed other burglaries, he was more likely to have committed this one, and is thus more likely to have handled this gun while doing so.

The Court notes that this inference is not, or is only minimally or trivially, based on a theory that Piper had a motive to sell the gun, and founds itself almost exclusively instead on the forbidden propensity inference (he had burgled before, was a burglar, and thus likely burgled again). There is no actual possession scenario that the Court can perceive to which an authentically motive-based use of the prior burglaries is relevant. Since the government does not detail a chain of reasoning based on motive that makes the prior burglaries relevant to actual possession, and the Court cannot find one, the prior burglaries are not admissible on an actual possession theory. *See Gomez*, 763 F.3d at 853.

   ii.   **Constructive Possession**

The government argues that evidence of the prior burglaries "helps prove that the defendant had at least joint constructive possession of the gun." Gov't's Resp. Mot. Limine 13. Although the government does not explain why this is so in detail, the Court agrees. Because Piper had committed previous burglaries and had an established practice of selling the fruits of the burglaries with Catherine, it is more likely that he was motivated by profit to do so with her on this occasion, had arranged with her to store the gun at her house pending its sale, and thus more likely that he had the power and intention to exercise control indirectly over the gun that

---

[3] This absurd hypothesis is, in any case, understandably not advanced by the government anywhere in its motion.

was recovered from the Mierendorf house on August 9. *See Katz*, 582 F.3d at 752. The evidence of the prior burglaries is relevant because it provides an explanation of why Piper might have had a motive to exercise constructive possession over the gun stored at Catherine's house, and thus passes the relevance step of the *Gomez* test for these purposes only.

### B. Propensity-Free Use of Other Burglaries to Show Constructive Possession

The government describes Piper's other burglaries as evidence that he had a motive to sell the gun in this case, and thus, is more likely to have had constructive possession of the gun: "the evidence that [Piper and Catherine Mierendorf] burglarized those other residences in order to profit from the stolen items goes to show that the defendant also intended to profit from the stolen gun, thereby establishing his motive for taking (possessing) it." Gov't's Resp. Mot. Limine 13. But it is not sufficient, as *Gomez* teaches, to observe that the other burglaries support a chain of inference about motive. If that chain of inference includes a forbidden prejudicial step, then it is inadmissible, even if offered for the legitimate, motive-based purpose. And this chain of inference does include such a step. For it is impossible to conclude that because Piper burgled many other houses with Catherine Meirendorf and sold the fruits, he must have had a possessory interest in stolen property she had at her house as fruit of yet another burglary, without inferring along the way that he had once again burgled a house with Catherine Meirendorf in conformity with his demonstrated tendency to do so. Without that key, propensity step, the evidence has no logical relation to the fact that Catherine Meirendorf had a gun in her clothes hamper. On closer examination, the reasoning that supports the government's proffered evidence may not be "propensity evidence all the way down," but it is propensity evidence at bottom. *Lee*, 724 F.3d at 978. It is therefore inadmissible.

9

The government cites *United States v. Schmitt*, __ F.3d __, 2014 WL 5315252 (7th Cir. Oct 20, 2014), in support of its contention that the prior burglaries show motive and may be admitted. Gov't's Resp. Mot. Limine 13–14. However, *Schmitt* is distinguishable. In *Schmitt*, a gun was found in Schmitt's apartment, which he shared with his girlfriend. To prove the nexus necessary for constructive possession, the prosecution introduced evidence that Schmitt was a drug dealer and that drugs were found in the house with the gun, in order to show that Schmitt had a reason to possess the gun. *Schmitt* at *7. The Seventh Circuit found that this was 404(b) admissible because "the government used the other bad acts evidence to establish why Schmitt would have a gun, and not simply to suggest that Schmitt had engaged in illicit conduct in the past, and so much have the propensity to do it again." *Id.* The drug-dealing evidence, in other words, was itself evidence of Schmitt's motive, explaining why he had a gun. In the instant case, the evidence that Piper had burglarized other houses does not explain why he would have reason to possess the gun. Piper's reason to possess the gun—sale—is explained by his burglary of the house from which it was taken. Prior burglaries only make that July 25 and 26 burglary itself more likely, and do so through an impermissible propensity route.

### C. Prejudice Versus Probative Value

Having decided the question on Rule 404 grounds, the Court further notes that the evidence of prior burglaries is somewhat probative, as explained above, but also highly prejudicial. Evidence that Piper burglarized four other houses during the summer of 2013 will likely cause the jury to regard Piper (accurately) as a career burglar, and to hold this status against him in deciding the question of whether or to what extent he participated in this burglary and the possession of this gun. Courts have deemed presentation of evidence of a *single* burglary presented in a felon in possession case to be more prejudicial than probative, and worthy of

10

exclusion, so it seems no stretch to observe that evidence of a pattern of burglary would be even more prejudicial and hence, even more excludable. *See United States v. Wiman*, 77 F.3d 981, 984 (7th Cir. 1996); *United States v. Rainone*, 9-cr-206, 2013 WL 389004, at *3 (N.D. Ill. Jan. 31, 2013).

## CONCLUSION

Accordingly, Piper's motion to exclude all evidence of his involvement in burglaries during the summer of July 2013 is GRANTED, except as to his involvement in the burglaries of July 25 and July 26 at the McVey house, as to which it is DENIED.

Entered this 24th day of November, 2014.

_____/s Sara Darrow_____
SARA DARROW
UNITED STATES DISTRICT JUDGE